NOT DESIGNATED FOR PUBLICATION

Nos. 128,431
128,906

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DAVID M. YOUNG,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Crawford District Court; M. JENNIFER BRUNETTI, judge. Submitted without oral argument. Opinion filed August 14, 2026. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Tyler W. Winslow*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before MALONE, P.J., HURST and COBLE, JJ.

PER CURIAM: In this consolidated appeal, David M. Young appeals the district court's denial of multiple K.S.A. 60-1507 motions, including a motion for DNA testing under K.S.A. 21-2512, following Young's rape conviction. Young's sole claim on appeal is that the district court erred by denying his postconviction motion for DNA testing when it denied his motions for relief under K.S.A. 60-1507. After thoroughly reviewing the record and arguments made by the parties, we affirm the district court's judgment, although our analysis differs from the district court's analysis.

1

FACTUAL AND PROCEDURAL BACKGROUND

We summarized the underlying facts of Young's criminal convictions in his direct appeal in *State v. Young*, No. 86,927, 2002 WL 35657594, at *1 (Kan. App. 2002) (unpublished opinion):

"On April 26, 2000, Young went to T.H.'s residence to retrieve his auto body training certificates and to talk to T.H., his ex-wife, about reconciling. Young arrived at T.H.'s residence at approximately 1:30 a.m. and knocked on the front door. When no one answered, he began knocking on the windows. He pounded on the window so hard that he broke the glass. T.H. then let Young into the residence. G.O., T.H.'s teenage son, was also at the residence. Once inside, Young and T.H. talked about getting back together. Young testified that they talked for about an hour.

"Young testified that he and T.H. then went to the bedroom and engaged in consensual sex. T.H., however, testified that Young took her to her bedroom where he told her to take off her panties, which she did. T.H. also testified that Young also told her to get into the bed and she complied. T.H. then testified that Young raped her. The next morning, T.H. told her boss that she had been raped. T.H. was examined at the hospital where a rape kit exam was performed.

"Young was charged with rape, aggravated burglary, and criminal damage to property. A jury convicted Young of rape and criminal damage of property and he was sentenced to 592 months' incarceration."

In Young's direct appeal, he claimed (1) that a nurse improperly testified on the issue of consent; (2) that the evidence was insufficient to support the rape conviction; and (3) that the district court erred by including Young's 1973 convictions in his criminal history. 2002 WL 35657594, at *1. This court found Young's 1973 convictions should not have been included in his criminal history but the error did not change Young's criminal history score, and this court otherwise affirmed Young's convictions and sentence. 2002 WL 35657594, at *4-5. The mandate was issued on June 17, 2002.

The procedural history of Young's postconviction proceedings is complicated, but we will summarize what has happened since 2002. In July 2003, Young filed a pro se K.S.A. 60-1507 motion raising many claims for relief, which was assigned case No. 03-CV-06 G. One of Young's claims was that he received ineffective assistance of trial counsel for counsel's failure to have DNA from the rape kit tested to find out "if the assault kit even implicated [Young]." The district court summarily denied the motion in part and held an evidentiary hearing on the remaining claims on January 21, 2004, at which Young was represented by counsel. Two days after the hearing, the district court ruled from the bench and denied the remainder of Young's motion. The district court denied Young's ineffective assistance of counsel claim for the failure to request DNA testing and explained that "in your instance when you admit to the sex, which you allege was consensual, there is simply no need to have the DNA kit or the sexual assault kit subjected to DNA testing." Young timely appealed the district court's denial of his motion, but that appeal went undocketed until 2025 when Young moved to docket the appeal out of time because his appointed counsel in 2004 failed to docket the appeal.

Meanwhile, Young filed another pro se K.S.A. 60-1507 motion in June 2019, which was assigned case No. 19-CV-01 G. Among the claims in that motion, Young sought "post-conviction DNA testing under K.S.A. 21-2512" for the fluid samples collected as part of the rape kit. Young argued that the DNA test could produce exculpatory evidence because "[if] another person['s] fluid samples [are] found in the alleged victim it would therefore tend to establish the defendant's innocence." The district court later appointed counsel for Young. In July 2023, as part of the K.S.A. 60-1507 proceedings, Young's appointed counsel filed a "Motion for DNA Testing" generally requesting DNA testing of samples collected during the criminal prosecution.

Also in July 2023, Young filed a pro se motion in his underlying criminal case, which he styled: "Petition for Relief Pursuant to K.S.A. § 60-1507(f)(2)(A) 'Actual Innocence.'" In this motion, Young argued that he was actually innocent based on the

introduction of false testimony from an expert witness at trial. Young asserted that his actual innocence of the rape charge established manifest injustice to excuse the untimely filing of his current K.S.A. 60-1507 motion.

The district court appears to have consolidated all the motions and held an evidentiary hearing on December 27, 2023. There, the district court took up Young's actual innocence motion under K.S.A. 60-1507(f)(2)(A), which Young's counsel agreed was a supplement to his 2019 K.S.A. 60-1507 motion. The parties also briefly discussed Young's standalone motion for DNA testing. The parties engaged in little discussion on the merits of Young's requests for DNA testing because the district court wanted to first address whether Young showed actual innocence to excuse his untimely 2019 K.S.A. 60-1507 motion "before we would even get to the DNA." The district court heard testimony from Young and ordered beforehand that Young's testimony should be limited to his claim of actual innocence by stating, "We are not on some extraneous [hearing] about the DNA. This is on his actual innocence claim to see if he even gets to the next step."

After hearing Young's testimony and the arguments from counsel on actual innocence, the district judge found "[t]here has been no colorable claim of actual innocence" and ruled "this [motion] is time barred. I am denying the motion." The district court later filed a journal entry of judgment approved by counsel in case No. 19-CV-01 G, denying the K.S.A. 60-1507 motion. Young timely appealed from that judgment, and the appeal was docketed in this court under appellate case No. 128,431.

As mentioned earlier, Young also moved to docket out of time his appeal from the denial of his 2003 K.S.A. 60-1507 motion, which this court granted, and that appeal was docketed in this court under appellate case No. 128,906. Young moved to consolidate the two appeals, which this court granted without objection.

4

Despite the complicated procedural history, Young's sole claim on appeal is narrow. Young argues that the district court erred "in including Young's request [for DNA testing] in its denial of his K.S.A. 60-1507 Motion as untimely." Young points out that a motion under K.S.A. 21-2512 is not subject to the time limitations of a K.S.A. 60-1507 motion. Essentially, Young claims the district court should have granted his standalone motion for DNA testing and should not have folded that request into his similar request for relief in the 2019 K.S.A. 60-1507 motion.

Although Young has gone to the trouble of docketing out of time his appeal from the denial of his 2003 K.S.A. 60-1507 motion, his brief raises no ineffective assistance of trial counsel claims and includes no arguments raised in that motion except for his claim about DNA testing. And although the district court denied Young's 2019 K.S.A. 60-1507 motion based on untimeliness and Young's failure to show actual innocence, Young's brief does not challenge any of these findings. Issues not briefed are considered waived and abandoned. *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021).

The State's brief cuts to the heart of the matter and argues that Young's request for DNA testing would have no exculpatory value because Young admitted at trial and continues to assert on appeal that the sex with his ex-wife leading to the rape conviction was consensual. As a result, the State argues the district court's denial of Young's request for DNA testing was right for the wrong reason.

Under K.S.A. 21-2512(a), a person in state custody, at any time after conviction for murder or rape, may petition the court for forensic DNA testing of any biological material that (1) is related to the investigation or prosecution that resulted in the conviction; (2) is in the actual or construct possession of the state; and (3) was not subjected to DNA testing, or can be subjected to retesting with new DNA techniques that

provide a reasonable likelihood of more accurate and probative results. Under K.S.A. 21-2512(c), the court shall order DNA testing pursuant to a petition made under subsection (a) "upon a determination that testing may produce noncumulative, exculpatory evidence relevant to the claim of the petitioner that the petitioner was wrongfully convicted or sentenced." Because the district court's denial of Young's request for relief under K.S.A. 21-2512 was not based on any factual findings from an evidentiary hearing, the denial is a question of law subject to unlimited review. See *State v. Holt*, 321 Kan. 125, 128, 573 P.3d 665 (2025).

We agree with the State that Young is not entitled to DNA testing where the results could produce no exculpatory evidence. Our Supreme Court has interpreted K.S.A. 21-2512(c) to require that the movant "make a plausible claim that current DNA testing could provide some exculpatory evidence." *Holt*, 321 Kan. at 129. The statute applies only when the petitioner clears the low-bar threshold of showing that testing could potentially yield exculpatory evidence. See 321 Kan. at 130 ("'Exculpatory' is a relatively low threshold to meet; however, evidence must still actually meet that threshold."); see also *State v. Smith*, 34 Kan. App. 2d 368, 373, 119 P.3d 679 (2005) (holding that the district court need not appoint counsel and hold an evidentiary hearing on a motion for DNA testing "where [the] files and records available to the district court demonstrate conclusively that such testing could not lead to exculpatory evidence").

The record here shows that Young's theory of defense at trial was consent, not his identification as the offender. Indeed, Young readily testified to his version of events that he propositioned his ex-wife for sex, she agreed, and the pair had consensual sex. Young reasserts in his appellate brief as his opening statement of fact: "A quarter-century later, Young maintains that the sexual contact he had with his ex-wife T.H. during the early-morning hours of April 26, 2000, was consensual."

6

We addressed a similar situation in *Smith* where, following convictions for rape and aggravated criminal sodomy, Smith moved for postconviction DNA testing under K.S.A. 2004 Supp. 21-2512, which the district court denied. On appeal, the record showed that Smith asserted below that his sexual conduct with the victim was consensual. Because the purpose of DNA testing under K.S.A. 21-2512 is to confirm or dispute the identities of those at the crime scene or involved in the crime, we concluded that, "[w]e fail to comprehend any possibility that DNA testing could assist in supporting a defense of consensual conduct or otherwise exculpate Smith." 34 Kan. App. 2d at 373-74.

The same analysis applies to Young. Young asserted below and continues to assert on appeal that the conduct giving rise to the rape conviction was consensual. Young's identity as the offender is not at issue. The district court correctly denied Young's request for relief on this issue in Young's original K.S.A. 60-1507 motion. Consistent with our decision in *Smith*, we find from the motion, files, and records of the case that Young's request for DNA testing cannot produce noncumulative, exculpatory evidence relevant to Young's claim that he was wrongfully convicted of rape. Thus, the district court did not err in denying Young's K.S.A. 60-1507 motions, which included a motion for DNA testing under K.S.A. 21-2512. See *Gannon v. State*, 302 Kan. 739, 744, 357 P.3d 873 (2015) (finding district court's judgment will be upheld if it is correct for any reason).

Affirmed.